**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-

ADRIENNE MARTINEZ and CHELSEA-ANN
SHORT, on behalf of themselves and all other
plaintiffs similarly situated, known and unknown

       Plaintiffs,

v.

SEMPER LASER HOLDINGS LLC DENVER, a
Delaware limited liability company, MACROS
PEIXOTO, individually, KRISTEN CAVERLY
PEIXOTO, individually AND STELLA QUEEN,
individually.

       Defendants.

                                                 **JURY DEMAND**

---

## COMPLAINT

NOW COME Plaintiffs, **ADRIENNE MARTINEZ AND CHELSEA-ANN SHORT**, ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and all other Plaintiffs similarly situated, by and through their attorneys, John W. Billhorn and Samuel D. Engelson of Billhorn Law Firm, and for their Complaint against Defendants, **SEMPER LASER HOLDINGS LLC DENVER, MACROS PEIXOTO, KRISTEN CAVERLY PEIXOTO AND STELLA QUEEN** (the "Defendants" or "Semper"), state as follows:

## I.    NATURE OF ACTION

1.    This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq* ("COMPS") and the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.*

## II.  JURISDICTION AND VENUE

2.      Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental Colorado statutory claims, pursuant to 28 U.S.C. §1367.

3.      Jurisdiction also arises through diversity of citizenship pursuant to 28 U.S.C. §1332(a).

4.      The citizenship of the Parties is completely diverse. Plaintiffs are each a citizen of Colorado, as are all of the putative Class members asserted to be entitled to Notice of the action. The Defendant corporation, domiciled in Delaware, is a citizen thereof for purposes of diversity jurisdiction. Defendant is incorporated in Delaware, transacted business in Delaware, and maintains its headquarters and principal place of business in Delaware.

5.      All Parties are citizens of, domiciled and otherwise live in different states.

6.      Additionally, the amount of money in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue lies in the District of Colorado in that during all times relevant to the employment relationship, Plaintiff performed work in this district and is a resident of this district and Defendants are or were engaged in business in this district.

## III.  THE PARTIES

8.      Defendant, **SEMPER LASER HOLDINGS LLC DENVER** ("SLH"), is a Delaware limited liability company that owns and operates a laser hair removal clinic and facility in Colorado, as well as several other states.[1] SLH sells laser hair removal and cosmetic services to clients.

---

[1] See https://www.semperlaser.com/en/locations

9.     SLH's primary Colorado business address is 3000 East 3rd Ave, Unit 34, Denver, CO 80206.

10.     SLH is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii).

11.     SLH ordered, used and handled goods and materials, including medical and cosmetic devices and products which moved in interstate commerce prior to being used or purchased in Colorado.

12.     During all relevant times, SLH was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

13.     SLH, including through their owners, executives and corporate management employees, oversaw all operations of SLH's clinics in Colorado, including business strategy and daily operations, and was responsible for assigning tasks, creating and distributing schedules, staff supervision, wage policies and otherwise oversaw all aspects of SLH's business operations and customer interactions.

14.     Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to SLH, including the individual Defendants named herein. SLH in turn responded to those communications with the authority described herein.

15.     Defendant **MACROS PEIXOTO** (hereinafter referred to individually as "Peixoto") is a founder, owner and the Chief Executive Officer of SLH.[2]

16.     Peixoto oversaw all operations of SLH, including business strategy and daily operations, sales, staffing, compliance, budgeting, and was responsible for related executive functions. Peixoto was also responsible for assigning tasks, setting strategies and benchmarks, sales quotas and other minute details, business operations and customer and stakeholder relations of SLH's Denver clinic.

17.     In his capacity as founder, owner and CEO of SLH, Peixoto was vested with the authority to carry out the wage and hour policies of SLH.

18.     Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Peixoto and Peixoto in turn responded to those communications with the authority described herein.

19.     Thus, at all times relevant hereto Peixoto was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, is an "employer".

20.     Defendant **KRISTEN CAVERLY PEIXOTO** (hereinafter referred to individually as "Caverly Peixoto") is a founder and owner of SLH.[3]

21.     Caverly Peixoto oversaw all operations of SLH, including business strategy and daily operations, marketing, advertising, sales, staffing, compliance, budgeting, and was responsible for related executive functions. Caverly Peixoto was also responsible for assigning

---

[2] https://www.linkedin.com/in/marcos-peixoto-0743925a/
[3] https://www.linkedin.com/in/kristen-caverly-peixoto/

4

tasks, setting strategies and benchmarks, sales quotas and other minute details, business operations and customer and stakeholder relations of SLH's Denver clinic.

22.      In her capacity as founder and owner of SLH, Caverly Peixoto was vested with the authority to carry out the wage and hour policies of SLH.

23.      Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Caverly Peixoto and Caverly Peixoto in turn responded to those communications with the authority described herein.

24.      Thus, at all times relevant hereto Caverly Peixoto was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, is an "employer".

25.      Defendant STELLA QUEEN (hereinafter referred to individually as "Queen") is the Director of Operations of SLH and serves as a corporate manager of SLH's Colorado clinic.[4]

26.      In her capacity as director of operations and corporate manager of SLH, Queen was vested with the authority, along with Peixoto and Caverly Peixoto, to implement and carry out the wage and hour practices of SLH.

27.      In her capacity as supervising manager of SLH, Queen was vested with the authority to implement and carry out the wage and hour practices of SLH.

28.      Queen acted as a primary manager of SLH and, along with SLH owners Peixoto and Caverly Peixoto, was responsible for assigning tasks, creating and distributing schedules, shelter and staff supervision, and oversaw all aspects of SLH's daily operations.

---

[4] https://www.linkedin.com/in/stella-queen-a30642213/

29.     Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Queen and Queen in turn responded to those communications with the authority described herein.

30.     Thus, at all times relevant hereto Queen was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore as defined under both the federal and state statutes relied upon, is an "employer".

31.     Plaintiff, **ADRIENNE MARTINEZ,** is a former Sales Manager ("SM") employee of Defendants.

32.     Plaintiff, **CHELSEA-ANN SHORT,** is a former Sales Manager ("SM") employee of Defendants.[5]

33.     Plaintiffs were both paid salaries and were classified by Semper as exempt employees. Plaintiffs also earned non-discretionary sales commissions in addition to their salaries.

34.     During Plaintiffs' employments with Semper, despite "manager" designations, Plaintiffs were essentially inside sales personnel whose duties mostly involved cold calls, in-clinic sales consultations and other marketing and sales efforts that were performed on the premises of Semper's clinic in Colorado.

35.     At other times during Plaintiffs' employments as salaried SMs, they spent substantial working time performing various non-exempt duties such as cleaning Semper's clinic (mopping, sweeping, disinfecting, etc.), ordering office supplies, cleaning/organizing the clinic, data entry, handing out flyers and coupons to the public, answering general customer calls and

---

[5] Plaintiffs note that Martinez's job title was "Senior" Sales Manager while Short's job title was "Junior" Sales Manager. However, Plaintiffs allege herein that the "senior" and "junior" designations were distinctions without a difference and effectively meaningless as Plaintiffs essentially performed the exact same job.

inquiries via phone and email, sending messages over social media to prospective clients and social media influencers and other non-exempt, secretarial duties tasks as assigned by Semper.

36.     Plaintiffs were compensated on a salary basis during their entire employment with Semper. At times, Plaintiffs were provided with certain, non-discretionary bonuses for sales performance.

37.     Over the course of their employments, Plaintiffs did not exercise independent discretion or judgment on matters of significance.

38.     Plaintiffs' primary job duties of selling laser hair removal and related cosmetic services served Semper's primary business initiatives of operating a laser hair removal and cosmetic clinic. If Plaintiffs did not sell cosmetic services, Semper's laser hair removal and cosmetic business could not operate. The sales and other tasks performed by Plaintiffs were not related to management or general business operations.

39.     Over the course of their employment, Plaintiffs did not manage two (2) or more full time employees or direct Semper's overall strategic business operations.

40.     During Plaintiffs' employments with Semper, Plaintiffs spent their working time either performing non-exempt sales work, manual labor tasks, or otherwise performed duties which did not require exercise of independent discretion and judgment, as Semper exerted control over Plaintiff's job duties and Semper's strategic business initiatives.

41.     As such, Plaintiffs were mis-classified as salary-exempt employees. Semper should have compensated Plaintiffs and other SMs as hourly employees entitled to overtime premiums for hours worked over 40 in individual work weeks.

42.     Plaintiffs were also required to use their own money to pay for Semper's promotional giveaways and events (such as food, drinks, candy, copies of promotional materials).

43.     Semper required Plaintiffs and other employees to incur Semper's business expenses of marketing, advertising and promotion. Plaintiffs' use of their own money to subsidize Semper's business marketing expenses was:

a)      for the primary benefit and convenience of the employer, Semper;

b)      not for the benefit or convenience of Plaintiffs;

c)      not reimbursed by Semper;

d)      were required without the written, revocable consent of Plaintiffs; and

e)      drove Plaintiffs' wages below the applicable minimum and overtime wage.

44.     Throughout all times pertinent to Plaintiffs' claims herein, Semper applied a common policy as to Plaintiffs and all SMs in Colorado, in that Semper classified all SMs as "salary exempt".

45.     Additionally, throughout all times pertinent to Plaintiffs' claims herein, Semper applied a common policy, developed by Semper's executives, corporate management and based upon Semper's successful and profitable cosmetic clinics that was embedded in its management policies and procedures relative to SMs.

46.     Semper delivered and implemented these rigid company policies, sales techniques and coaching over the course of a mandatory two-week training class at the company's headquarters in Miami, Florida, which was attended by Plaintiffs, as well as on a daily basis during the entire employments of Plaintiffs working at the Colorado clinic.

47.    This common policy promoted, encouraged, and resulted in SMs, including the Named Plaintiffs herein, to participate and engage in substantially similar and comparable, essential job duties and tasks on a daily or weekly basis that:

a)    were not primarily office or non-manual;

b)    were not directly related to management or general business operations of Semper;

c)    did not include the primary duty of discretion and independent judgment on matters of significance;

d)    did not require or involve management of two (2) or more full-time employees;

e)    did not involve management of the enterprise or of a customarily recognized department or subdivision;

f)    did not involve authority to hire or fire other employees, suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees;

g)    did not involve being customarily and regularly engaged away from the Semper's place or places of business in performing a primary duty of makes sales; and

h)    required Plaintiffs to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

48.    Additionally, the claims of the Named Plaintiffs, and the Plaintiff Class, are nearly identical in that regardless of which store location any SM herein worked, Semper hired, recruited, enrolled and offered employment as an SM to all members of the Plaintiff Class premised on an single, identical job description, including identical job duties, job objectives, job responsibilities,

job qualifications (including experience and education), language skills, manual labor capabilities
and general working conditions.

49.     The SM job description, which was used and implemented at all of Semper clinics
within the District of Colorado, and elsewhere, was drafted, approved and disseminated by
Semper's corporate offices in line with Semper's corporate directives and policies that were
common to all Colorado clinics.

50.     As a result of the common policies described above, the Named Plaintiffs and
members of the Plaintiff Class were improperly classified as salary exempt and denied overtime
pay for work in excess of 40 hours in a work week.

51.     Common questions of law exist among the claims of the Named Plaintiffs and
members of the Plaintiff Class in that each SM's claims rest upon a challenge of Semper's claimed
exemption(s).

52.     All other unnamed Plaintiffs, known and unknown ("members of the Plaintiff
Class", "Plaintiff Class" or "similarly situated Plaintiffs"), are past or present salaried SM
employees who were also on a salary basis and did not receive overtime premiums at a rate of one-
and one-half their regular hourly rates of pay for hours worked in excess of 40 in a workweek as
described herein.

53.     As an employee(s) performing duties for an enterprise engaged in commerce, the
Named Plaintiffs and all members of the Plaintiff Class were also engaged in commerce as defined
by the FLSA.

## IV.    STATUTORY VIOLATIONS

### Collective Action Under the Fair Labor Standards Act

54.   Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by the Named Plaintiffs as an opt-in representative or collective action, on behalf of themselves and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.*, to recover unpaid overtime wages and additional damages. Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

### Colorado Overtime and Minimum Pay Standards Order, #38

55.    Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq.*, Count IV of this action is brought by the Named Plaintiffs to recover unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by the Named Plaintiffs herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

### Colorado Wage Act

56.    Pursuant to the Colorado Wage Act, §8-4-101, *et seq.*, C.R.S., Count V of this action is brought by the Named Plaintiffs to recover earned, vested and determinable unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by the Named Plaintiff herein under the CWA are proper for certification under Federal Rule of Civil Procedure 23.

57.     Pursuant to the Colorado Wage Act, §8-4-105, *et seq*., C.R.S., Count V of this action is brought by the Named Plaintiffs to recover improper deductions in the form of money Semper required Plaintiffs to forfeit to bear the cost of Semper's business expenses.

## V.     FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

58.     Plaintiffs, at all times pertinent to the cause of action, were employed by Semper.

59.     Plaintiffs' employments as SMs, which involved selling laser hair removal and cosmetic services were integral and indispensable to Semper's business which depended on sales of laser hair removal and cosmetic services to operate its laser hair removal clinics.

60.     Plaintiff Martinez began working for Semper in approximately May 2022. Martinez separated from her employment with Semper in November 2022.

61.     As an SM, Martinez was compensated on a salary basis and classified by Semper as exempt from overtime compensation.

62.     Martinez's job as an SM was to sell laser hair removal and cosmetic services to customers.

63.     Martinez worked at the Semper located at 3000 East 3rd Ave, Unit 34 in the Cherry Creek area of Denver, Colorado.

64.     Martinez was employed as an SM, in part as outlined and under the terms of Semper's Semper "Sales Manager" position description.

65.     Martinez was compensated by salary of $2,208.33 paid bi-monthly, or $53,000 annually.

66.     Martinez typically worked Monday through Friday, but often worked a sixth day each week on Saturday. Martinez typically worked from approximately 8:00 a.m. to 8:00 p.m.

each day. Martinez's schedule was set by Semper approximately one year in advance. Martinez did not have any input on the advance schedule set and imposed by Semper and their corporate office.

67.    At times, Martinez also worked additional hours after regular business hours or on weekends attending trade shows, promotional events, handing out flyers/coupons, or operating Semper's social media accounts.

68.    Martinez typically worked at least 60 hours per week due to the high demands of the SM job imposed by Semper.

69.    Martinez worked these hours because Semper implemented sales targets for Martinez to meet each month, such that substantial work hours were required each week to meet sales goals and quotas. Semper advised Martinez that failure to meet weekly sales goals could result in reprimands, up to termination.

70.    Martinez did not clock in and out at the beginning and end of each shift, as she was not required to do so by Semper. Semper did not have Martinez clock in and out because of the purported salary exemption claimed by Semper.

71.    Plaintiff Short began working for Semper in approximately May 2022. Martinez separated from her employment with Semper in December 2022.

72.    As an SM, Short was compensated on a salary basis and classified by Semper as exempt from overtime compensation.

73.    Short's job as an SM was to sell laser hair removal and cosmetic services to customers.

74.    Short worked at the Semper located at 3000 East 3rd Ave, Unit 34 in the Cherry Creek area of Denver, Colorado.

75.    Short was employed as an SM, in part as outlined and under the terms of Semper's Semper "Sales Manager" position description.

76.    Short was compensated via salary of $1,658.65 paid bi-monthly, or $44,600 annually.

77.    Short was required to work a minimum of 47.5 hours each week, typically Monday through Friday. Short's schedule was set by Semper approximately one year in advance. Short did not have any input on the advance schedule set and imposed by Semper and their corporate office. Short often worked a sixth day each week on Saturday. Short typically worked from approximately 8:00 a.m. to 8:00 p.m. each day.

78.    At times, Short also worked additional hours after regular business hours or on weekends attending trade shows, promotional events, handing out flyers/coupons, or operating Semper's social media accounts.

79.    Short typically worked in excess of her required hours, around 60 hours per week, due to the high demands of the SM job imposed by Semper.

80.    Short worked these hours because Semper implemented sales targets for Short to meet each month, such that substantial work hours were required each week to meet sales goals and quotas. Semper advised Short that failure to meet weekly sales goals could result in reprimands, up to termination.

81.    Short did not clock in and out at the beginning and end of each shift, as she was not required to do so by Semper. Semper did not have Short clock in and out because of the purported

salary exemption claimed by Semper.

82.     Plaintiffs were hired as SMs under the perception that they would be managing, supervising, and training an experienced sales team and have authority to direct the work of subordinate sales employees. However, once Plaintiffs began work as SMs, the actual day-to-day job duties and other circumstances of SM employment differed substantially such that Plaintiffs did not perform any managerial duties.

83.     During a two-week corporate training at Semper's headquarters in Miami, Florida, Plaintiffs were provided template training documents and techniques that were required to be used by them. These materials provided specific instructions and techniques for selling and upselling laser hair removal and related cosmetic services.

84.     Plaintiffs were instructed to use Semper's template sales training and techniques and not deviate from them. Plaintiffs had no authority to unilaterally alter or otherwise suggest changes to Semper's template sales materials and instructions.

85.     As Plaintiffs began their employments as SMs with Semper, Plaintiffs' actual day-to-day job duties differed from those asserted by Semper in the interview and hiring process and as outlined in onboarding materials, including the job description.

86.     Plaintiffs essentially worked as inside retail sales associates and performed a mix of related duties such as cold-calling, in-person sales pitches/consultations and social media outreach. Plaintiffs estimate that they spent at least 3 hours per day, if not more, cold-calling potential customers from leads given to them by Semper.

87.     The remaining hours of Plaintiffs' workdays were spent a) conducting in-person sales consultations/pitches with customers in the clinic, b) cleaning the facility, c) performing

social media outreach and d) engaging in basic sales data entry.

88.     Plaintiffs, as SMs, were required and expected to use corporate sales materials and training techniques. Semper provided template, pre-made brochures, flyers and other sales/marketing materials. Plaintiffs had no authority or discretion to create sales/promotional materials.

89.     Plaintiffs were at all times expected to diligently follow and adhere to corporate outlines and procedures for sales of laser hair removal services. Plaintiffs were advised by Peixoto, Caverly Peixoto and Queen that Plaintiffs were not permitted to deviate from corporate sales techniques and processes and were instructed to follow/mimic the pitch techniques Semper taught at the initial training sessions in Florida and thereafter.

90.     Plaintiffs had no authority over pricing. The pricing of all services and products offered by Semper were dictated by Semper and their management employees, including Peixoto, Caverly Peixoto and Queen.

91.     Plaintiffs were given parameters and limits by Semper and their management employees for all discounts. Plaintiffs had no authority or discretion to alter Semper's discount policies and structures. Plaintiffs were required to bring all requests for exceptions to Semper's pricing and discount policies to the attention of Semper – specifically Peixoto and Queen.

92.     Plaintiffs were required to adhere to strict sales goals and quotas. Most mornings, Plaintiffs were required to attend a meeting/conference call with Semper's corporate regional manager, Christie Johnson, to review sales expectations imposed by Semper. Plaintiffs were required to send "end of day" sales reports to Peixoto and Queen on a daily basis, such that Semper maintained total control over sales and other primary daily business operations of Semper.

93.     Similarly, Plaintiffs were not permitted any input in personnel decisions. All decisions related to hiring, firing, employee discipline, employee pay, performance management and training were made by Semper and their corporate employees, including Peixoto, Caverly Peixoto, Queen and District Manager Karee Edwards.

94.     Semper's corporate office chose all employee candidates and made the final hiring decisions of new employees.

95.     Plaintiffs were required to submit disciplinary issues and write-ups to simper's corporate human resources team to be reviewed and approved by Semper's corporate regional manager. Semper directly disseminated discipline to the relevant employee, without any participation or assistance by Plaintiffs.

96.     Plaintiffs did not directly supervise two (2) or more full-time employees and did not have any direct reports. Plaintiffs did not have any true management responsibility over either any of the laser technicians, or the receptionist, as Semper and their corporate employees set schedules, pay, and managed performance.

97.     Plaintiffs performed substantial non-exempt work including manual labor work (including cleaning, organizing, and disinfecting the clinic), inspected equipment, handed out flyers and promotional items to the public, and related duties.

98.     Plaintiffs were expected to carry and hand out promotional items and vouchers any time they were off Semper's premises, including when at lunch and after hours.

99.     Plaintiffs spent significant amounts of time performing general data entry tasks, including entering customer information and paperwork into sales databases.

100.    Plaintiffs were also assigned to the front desk and worked substantial hours as the clinic receptionist when the full-time receptionist separated from Semper.

101.    Semper specifically asked Plaintiffs to assume receptionist duties and work additional hours in order to handle receptionist work and still perform inside sales duties.

102.    When working as receptionist, Plaintiffs handled general customer service duties, customer inquiries, phone calls, etc. Plaintiffs were not provided addition compensation for these additional, non-exempt receptionist duties.

103.    Plaintiffs' jobs were and are a product of Semper's myriad common policies and uniform procedures developed and implemented by Semper's corporate offices.

104.    Plaintiffs and all other SMs were employed under the terms the SM position description(s). All SMs were each provided identical copies of a position description at the start of their employments.

105.    The common terms of employment for SMs, including salary compensation for all hours worked, were intentionally and purposefully made identical by Semper in each store location within the District of Colorado, and elsewhere, so that Semper could establish uniformity and common practice among its cosmetic clinics.

106.    The uniform and common practices and policies implemented by Semper, including the job duties and compensation structure, applied to all SMs, including Plaintiffs. These uniform and common practices and policies as to SMs were vital for Semper to successfully replicate its consistent and proven model for profitable cosmetic clinics.

107.    Due to the uniform clinic model and related common policies and practices implemented by Semper's corporate offices, most, if not all, of the SM job duties as described

were pre-determined by Semper's corporate policies, directives, template forms, manuals and instructions, etc.

108.    Semper, through its corporate offices, executive employees and other upper management employee, including Peixoto, Caverly Peixoto and Queen, exercised extensive control over the SM job duties and day-to-day assignments, duties and tasks undertaken by Plaintiff and other SMs.

109.    Plaintiffs' job duties and tasks were highly regulated and controlled, sometimes on a step-by-step and incremental level, by Semper's common corporate policies, structures, manuals and forms (i.e., training materials, sales strategies, scripts, etc.) such that Plaintiffs and members of the Plaintiff Class were prohibited from exercising discretion and independent judgment as to matters of significance within Semper's clinic operations.

110.    As SMs, Plaintiffs were directed by Semper to strictly adhere to corporate policies and manuals, template forms, scripts, letters and documents, computer programs, and related items that were implemented at all clinics in the District of Colorado and elsewhere.

111.    Because Plaintiffs and members of the Plaintiff Class were required to adhere to Semper's uniform policies and guidelines, they were unable to exercise discretion and independent judgment as to the SM duties outlined by Semper in position descriptions.

112.    Semper directly controlled most, if not all, aspects of the day-to-day SM duties of Plaintiffs and members of the Plaintiff Class, through both common and uniform corporate policies and other verbal or written instructions by Semper's management employees based on said policies.

113.    This level of control exerted by Semper afforded no opportunity for Plaintiffs and members of the Plaintiff Class to exercise the degree of discretion and independent judgment necessary to satisfy the administrative exemption or any other purported salary exemption.

114.    Additionally, Defendants provided step-by-step instructions to Plaintiffs and members of the Plaintiff Class regarding certain metrics used to track sales, which were of importance to Semper in maintaining its uniform, profitable business model and which resulted in Plaintiffs and other SMs exercising no discretion as to selling and pricing.

115.    Most tasks performed by Plaintiffs and members of the Plaintiff Class required the review and approval of Semper, who would review Plaintiffs' work in conjunction with Semper's uniform corporate procedures and guidelines, such that Plaintiffs and members of the Plaintiff Class were not permitted to independently make decisions regarding the majority of the aspects of their day-to-day job duties.

116.    Plaintiffs and members of the Plaintiff Class were evaluated by Semper's management employees on a regular basis. Plaintiffs and all SMs were evaluated using identical, universal and common job performance evaluations developed by Semper's corporate office that were used by all clinics in the District of Colorado and elsewhere. Plaintiffs and members of the Plaintiff Class were evaluated based on how well they satisfied certain sales metrics and policies implemented by Semper and whether they followed Semper's instructions on how to track or achieve these metrics and standards.

117.    Over the course of their employments, Plaintiffs and members of the Plaintiff Class were reprimanded by Semper, including during regular employment evaluations, for failure to adhere satisfy the strict sales metrics based on the corporate guidelines, protocols, standards,

policies and practices that determined most, if not all, aspects of the job duties of Plaintiffs and Plaintiff Class members and how said duties were to be performed.

118.    As a result of Defendant's overbearing, extensive and minute involvement and control over the day-to-day duties of Plaintiffs and members of the Plaintiff Class and the affirmative lack of any supervisory responsibility, SMs did not qualify for the administrative exemption, executive exemption, or any other salary exemptions and should have been paid by the hour, including overtime premiums for hours worked in excess of 40 in individual work weeks.

119.    Plaintiffs also used their own money to pay for items used for Semper's promotional events, trade shows, etc. Plaintiffs regularly used their own money to cover Semper's business expenses incurred for promotional activities. Plaintiffs made purchases for Semper for Semper's benefit at grocery/convenience stores, office supply stores, party supply stores and other retail stores.

120.    Plaintiffs were required to use their own funds to buy food, candy, drinks, copies, and decorations for Semper's benefit.

121.    Semper did not always reimburse these expenses incurred by Plaintiffs on Semper's behalf for Semper's benefit.

122.    Plaintiffs did not benefit from the use of their own funds for these purposes. Plaintiffs' use of their own funds was not for Plaintiffs' convenience.

123.    Plaintiffs' use of their own funds to cover Semper's business expense for promotional efforts brought Plaintiffs' minimum wage or overtime rates below the applicable rates imposed by state law.

124.    Plaintiffs and members of the Plaintiff Class worked or work in excess of forty (40) hours in a workweek without pay for hours worked over forty (40) at a rate of time and one-half their regular hourly rate of pay, pursuant to the requirements of the federal and state statutes herein relied upon.

125.    Semper has, both in the past and presently, willfully employed Plaintiffs and members of the Plaintiff Class as SMs without pay at a rate of one and one-half times their rates of pay for hours worked in excess of 40 in a workweek.

126.    The total number of hours worked by Plaintiffs and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Semper, in that Semper recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent Semper lacks the records required by 29 CFR Part 516, Plaintiffs and members of the Plaintiff Class will be capable of providing reasonable estimates of that time, as permitted by law.

127.    The non-compliant practices as alleged herein are common to Plaintiff and all other SMs.

128.    During their entire employments with Semper, Plaintiffs, and members of the Plaintiff Class, were paid on a bi-monthly basis. Plaintiffs, and members of the Plaintiff Class, were only paid their regular salary for all hours worked, including hours in excess of 40 hours in a single work week.

129.    Upon information and belief, Plaintiffs understood that other SM employees at all Semper locations in Colorado and elsewhere were paid in the same or similar fashion as described

above and were also denied overtime premiums for hours worked in excess of 40 in individual work weeks as a result of Semper's improper salary classification.

130.    Plaintiffs, and members of the Plaintiff Class on a regular basis worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half their hourly rates of pay for such hours pursuant to the requirements of the federal and state law.

131.    Plaintiffs and members of the Plaintiff Class were not exempt from the overtime provisions of the FLSA or COMPS. Likewise, Plaintiffs and members of the Plaintiff Class were entitled to the wage protections afforded by the CWA, which applies to timely payment of earned overtime wages. As such, Plaintiffs and similarly situated employees were and are entitled to overtime premiums of time and one-half their hourly rates of pay for hours worked over 40 in individual work weeks.

132.    The claims brought herein by the Named Plaintiffs are based on non-compliant practices and policies implemented by Semper and are identical or similar to the claims of other past and present employees who were subject to the same non-compliant policies and practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-132.  Paragraphs 1 through 132 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 132 of this Count I.

133.    Plaintiffs, and members of the Plaintiff Class, were each an "employee" pursuant to 29 U.S.C. §203(e).

134.    Defendants were each an "employer" pursuant to 29 U.S.C. §203(d).

135.    Plaintiffs, and members of the Plaintiff Class, were not exempt from the maximum hours provisions of 29 U.S.C. §207.

136.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the named Plaintiffs, and all other Plaintiffs similarly situated, known and unknown, are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in any week during the two (2) years preceding the filing of this action.

137.    Defendants have at all times relevant hereto failed and refused to pay compensation to their workers/employees, including the Named Plaintiffs herein and all other Plaintiffs similarly situated, known and unknown as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)    prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c)    Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and

(d)    such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-137.   Paragraphs 1 through 137 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 137 of Count II.

138.    Semper's actions as complained above were done with Semper's knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether the policies and practices were in violation of those statutes.

139.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Semper, Semper possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

140.    Pursuant to the Fair Labor Standards Act, Plaintiffs and all other employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)     back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b)     prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)      Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(d)      such additional relief the Court deems appropriate under the circumstances.

## COUNT III

### LIQUIDATED DAMAGES
### UNDER THE FAIR LABOR STANDARDS ACT

1-140.  Paragraphs 1 through 140 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 140 of Count III.

141.     In denying Plaintiffs and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds.

142.     Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Semper, Semper possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

143.     The Named Plaintiffs and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)      liquidated damages equal to the amount of all unpaid compensation;

(b)      Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)      such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

**SUPPLEMENTAL STATE LAW CLAIM
VIOLATION OF THE COLORADO OVERTIME
AND MINIMUM PAY STANDARDS ORDER, #38**

1-143.  Paragraphs 1 through 143 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 143 of this Count IV.

144.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*.

145.    Plaintiffs, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A) and were not exempt from the minimum or overtime wage provisions of COMPS 7 CCR 1103-3.1, 4.1.

146.    Defendants were each an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

147.    Under COMPS 7 CCR 1103-4.1, for all weeks during which Plaintiffs and members of the Plaintiff Class worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

148.    Defendants' failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of COMPS 7 CCR 1103-4.1.

149.    COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of overtime wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid balance of the full amount of overtime wages due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for the three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

(d)    such additional relief the Court deems appropriate under the circumstances.

<u>**COUNT V**</u>

**SUPPLEMENTAL STATE LAW CLAIM**
**<u>VIOLATION OF THE COLORADO WAGE ACT</u>**

1-149.    Paragraphs 1 through 149 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 149 of this Count V.

150.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Wage Act, C.R.S. §8-4-101, *et seq*.

151.    The CWA defines wages as "[a]ll amounts for labor or service performed by employees", regardless of whether "the amount is fixed or ascertained by the standard of time". Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable". CWA, C.R.S. §8-4-101(14(a)(I)-(III).

152.    Plaintiffs, and members of the Plaintiff Class, were each an "employee" under CWA, C.R.S. §8-104-101(5) and were not exempt from the CWA's protections.

153.    Defendants were each an "employer" as defined by CWA, C.R.S. §8-104-101(6) and were not exempt from compliance with the CWA.

154.    Pursuant to CWA, C.R.S. §8-4-101(14)(a)(II)-(III), Plaintiffs and members of the Plaintiff Class, who were misclassified as exempt employees, worked hours in excess of 40 in individual work weeks which required pay at time and on-half their regular hourly rates of pay.

155.    Once Plaintiffs and members of the Plaintiff Class worked hours over 40 in individual work weeks, they earned overtime compensation, although it was not paid. As such, the overtime premiums for which Plaintiffs and members of the Plaintiff Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

156.    Plaintiffs and members of the Plaintiff Class did not receive overtime premiums of one and one-half time their regular rates of pay for hours worked over 40 in individual work weeks.

157.    Pursuant to the Colorado Wage Act, §8-4-105(1), *et seq*., C.R.S., no employer shall made a deduction from wages or compensation except if the deductions are mandated by law or court order, attributable to automatic enrollment in an employee retirement plan, for loans, advances or goods/services provided to an employee pursuant to written agreement, necessary to cover shortage due to theft by employee, or related to the value of property an employee failed to return to employer.

158.    Pursuant to the Colorado Wage Act, §8-4-105(2), *et seq*., C.R.S., the CWA does not permit or authorize deductions that may reduce an employee's minimum wage or overtime rate required by the FLSA.

159.    Pursuant to CWA, C.R.S. §8-4-109(3)(b), if an employer fails to pay an employee their earned, vested and determinable wages as set forth by the CWA within fourteen (14) days of

service of a written demand, the employee is entitled to a penalty of a) 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due.

160.    Plaintiffs' Complaint herein serves as a valid written demand under the CWA, C.R.S. §8-4-101(15) and -109(3)(a) for unpaid overtime wages on behalf of themselves and members of the Plaintiff Class .

161.    Pursuant to CWA, C.R.S. §8-4-109(3)(c), if the employee(s) can prove that the employer's failure to pay wages due under the Act, each of the penalties set forth under CWA, C.R.S. §8-4-109(3)(b) shall increase by 50%.

162.    Semper's failure and refusal to pay earned overtime wages and reimburse deductions/expenses incurred by Plaintiffs on Semper's behalf, as demanded in writing herein within the fourteen (14) day period described by the CWA, C.R.S. §8-4-109(3)(a.5), was willful and in bad faith.

163.    Plaintiffs and members of the Plaintiff Class are owed all earned, unpaid overtime wages, non-reimbursed expenses and statutory penalties, including increased penalties for willful violations of the CWA.

164.    Per CWA, C.R.S. §8-4-110, Plaintiffs and members of the Plaintiff Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    unpaid, earned and vested overtime wages;

(b)    statutory penalties of 125% of the amount of wages due up to and including

$7,500; and b) 50% of the amount for wages due over and above the first $7,500 due;

(c)     additional statutory penalties of 50% on top of the penalties prescribed by CWA,

§8-4-109(3)(b) for Semper's willful violation of the CWA;

(d)     Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of

Defendants' violations of the Colorado Wage Act; and

(f)     such additional relief the Court deems appropriate under the circumstances.

Respectfully submitted,

***Electronically Filed 02/03/2023***

/s/ Samuel D. Engelson
Samuel D. Engelson
Colorado Bar No: 57295

John William Billhorn
Attorneys for Plaintiff, and those similarly
situated, known and unknown

BILLHORN LAW FIRM
7900 E. Union Ave., Suite 1100
Denver, Colorado 80237
(720)-386-9006

53 W. Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312)-853-1450